PHENIX INSURANCE COMPANY OF BROOKLYN V. OMAHA LOAN & TRUST COMPANY.

FILED SEPTEMBER 19, 1894.    No. 5459.

1. **Fire Insurance:** MORTGAGE CLAUSE: RIGHTS OF MORT-GAGEE: EFFECTS OF TRANSFER OF PROPERTY WITHOUT CONSENT OF INSURER OR NOTICE: ASSIGNMENT OF MORTGAGE: ACTION ON POLICY. One Crew borrowed of a trust company $4,000, agreeing to repay it in five years with semi-annual interest. To secure the payment of this debt Crew executed to the trust company a mortgage upon his real estate. This mortgage provided that Crew should insure the mortgaged property against loss by fire for five years for the benefit of the trust company. About the date of the mortgage an insurance company issued to Crew a policy insuring the property against loss by fire for five years. This policy contained the following provisions: (*a.*) "If the property be sold or transferred in whole or in part without written permission in this policy, then, and in every such case, this policy is void." (*b.*) "When the property shall be sold or incumbered, or otherwise disposed of, written notice shall be given the company of such sale or incumbrance or disposal; otherwise this insurance on said property shall immediately terminate." Attached to this policy and made part thereof was a "mortgage slip," as follows: "It is hereby agreed that this insurance, as to the interest of the mortgagee only therein, shall

not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy. It is further agreed that the mortgagee shall notify said company of any change of ownership or increase of hazard which shall come to the knowledge of the said mortgagee, and that every increase of hazard not permitted by this policy to the mortgagor or owner shall be paid for by the mortgagee on reasonable demand, according to the established scale of rates, for the whole term of use of such increased hazard. It is also agreed that whenever the company shall pay the mortgagee any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, it shall at once be legally subrogated to all the rights of the mortgagee under all the securities held as collateral to the mortgage debt, to the extent of such payment; or, at its option, may pay to the mortgagee the whole principal due, or to grow due, on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and all other securities held as collateral to the mortgage debt; but no such subrogation shall impair the right of the mortgagee to recover the full amount of its claim." The policy, on its issuance, was delivered to the trust company, which retained the possession and title thereof. Crew sold and conveyed the mortgaged property without the written permission of the insurance company, and of which sale the latter had no notice of any kind until after the insured property was destroyed by fire. The trust company learned of the conveyance of the property soon after it occurred, but neglected to notify the insurance company thereof until after the fire. Prior to the destruction of the insured property by fire the trust company sold and assigned the mortgage debt, guarantying the collection and payment thereof, but did not assign the insurance policy nor part with its possession. The mortgage debt was unpaid and not due at the time of the destruction of the insured property. The trust company brought suit against the insurance company to recover the amount of the loss. While this action was pending the mortgage debt matured, and the trust company, in pursuance of its contract of guaranty, paid it off. *Held*, (1) That neither the sale and conveyance of the mortgaged property by Crew without the permission of the insurance company, nor his failure to give the insurance company notice thereof, voided the policy as to the trust company; (2) that the status of the trust company was not that of a mere assignee of the insurance policy issued to Crew, nor that of a person appointed to collect the loss for him; that the policy con-.

tained a contract between the insurance company and the trust company separate and independent from the contract between Crew and the insurance company, and that the rights of the trust company could not be made to depend upon Crew's observance of his agreements with the insurance company; (3) that the neglect of the trust company to notify the insurance company of the sale of the mortgaged property did not void the policy as to the trust company.

2. ———: ———: ———: ———: PARTIES PLAINTIFF IN ACTION ON POLICY. That as by the terms of the insurance policy the loss was made payable to the trust company, and as it owned and held possession of the policy and had guarantied the payment of the mortgage debt, the suit was properly brought in its name, although the assignee of the mortgage debt was also a proper party plaintiff.

ERROR from the district court of Douglas county.   Tried below before WAKELEY, J.

The facts are stated by the commissioner.

*Jacob Fawcett* and *F. M. Sturdevant*, for plaintiff in error:

The alienation of the property by Crew avoided the policy. (*Hale v. Mechanics Mutual Fire Ins. Co.*, 6 Gray [Mass.], 169; *Loring v. Manufacturers Ins. Co.*, 8 Gray [Mass.], 28; *Grosvenor v. Atlantic Ins. Co.*, 17 N. Y., 391; *State Mutual Fire Ins. Co. v. Roberts*, 31 Pa. St., 438; *Buffalo Steam Engine Works v. Sun Mutual Ins. Co.*, 17 N. Y., 401; *Pupke v. Resolute Fire Ins. Co.*, 17 Wis., 389; *Lawrence v. Holyoke Ins. Co.*, 11 Allen [Mass.], 387; *Gasner v. Metropolitan Ins. Co.*, 13 Minn., 447; *Chishom v. Provincial Ins. Co.*, 20 U. C. C. P., 11; *Illinois Mutual Fire Ins. Co. v. Fix*, 53 Ill., 151; *Carpenter v. Providence Washington Ins. Co.*, 16 Pet. [U. S.], 495.)

*Howard B. Smith*, contra:

The relations between the defendant in error and the plaintiff in error are determined by virtue of the mortgage

slip. A contractual relation exists between the insurer and the mortgagee separate and distinct from the contractual relation between the insurer and the mortgagor. (*Hartford Fire Ins. Co. v. Olcott*, 97 Ill., 449; *City Five Cents Savings Bank v. Pennsylvania Fire Ins. Co.*, 122 Mass., 165; *Hastings v. Westchester Fire Ins. Co.*, 73 N. Y., 141.)

The defendant in error had an insurable interest at the time of the fire. (*New England Fire & Marine Ins. Co. v. Wetmore*, 32 Ill., 221; *Warren v. Davenport Fire Ins. Co.*, 31 Ia., 464; *State v. Farmers Benevolent Association*, 18 Neb., 276; *Cone v. Niagara Fire Ins. Co.*, 60 N. Y., 619; *Power v. Ocean Ins. Co.*, 19 La., 28; *Strong v. Manufacturers Ins. Co.*, 10 Pick. [Mass.], 40; *Morrison v. Tennessee Marine & Fire Ins. Co.*, 18 Mo., 262; 1 May, Insurance [3d ed.], sec. 76; Wood, Fire Insurance [2d ed.], p. 613; Richards, Insurance, sec. 26; *Grable v. German Ins. Co.*, 32 Neb., 645.)

The action was properly brought by the defendant in error. (*Waring v. Indemnity Fire Ins. Co.*, 45 N. Y., 606*; *New York Life Ins. Co. v. Bonner*, 11 Neb., 169; *Hunt v. Mercantile Ins. Co.*, 22 Fed. Rep., 503; *Gardinier v. Kellogg*, 14 Wis., 605; *Scantlin v. Allison*, 12 Kan., 85; *Stoll v. Sheldon*, 13 Neb., 207; *Roberts v. Snow*, 27 Neb., 425.)

RAGAN, C.

The Omaha Loan & Trust Company (hereinafter called the "Trust Company") sued the Phenix Insurance Company of Brooklyn, New York (hereinafter called the "Insurance Company"), in the district court of Douglas county to recover the value of certain property destroyed by fire and insured by the Insurance Company. The Trust Company had judgment and the Insurance Company brings the case here for review. The material facts in the case are: In February, 1886, One Nathaniel S. Crew was the owner of a tract of land in Buffalo county, Nebraska, on which were situate a barn and some other buildings. In

said month of February, Crew and his wife borrowed of
the Trust Company $4,000, and as an evidence thereof exe-
cuted and delivered to the Trust Company their coupon
bond, payable to the order of the Trust Company five
years after February 1, with interest payable semi-annu-
ally, and secured the same by a first mortgage on their said
real estate.   By the terms of this mortgage Crew and his
wife agreed to insure, and keep insured for five years, the
buildings on their real estate for the benefit of the Trust
Company.   On the 3d day of March, 1886, the Insurance
Company issued the policy sued on, insuring the buildings
of Crew on his real estate against loss or damage by fire
for a period of five years.   The policy contained the fol-
lowing clauses: (a.) "If the property be sold or transfer-
red in whole or in part without written permission in this
policy, then, and in every such case, this policy is void."
(b.) "When the property shall be sold or incumbered or
otherwise disposed of, written notice shall be given the
company of such sale or incumbrance or disposal; other-
wise this insurance on said property shall immediately ter-
minate."   Attached to this policy and made a part thereof
was also what is known and called among insurance men a
"mortgage slip," which contained the following:

"PHENIX INSURANCE CO. OF BROOKLYN, N. Y.

"Loss, if any, payable to Omaha Loan & Trust Com-
pany, of Omaha, Neb., mortgagee, or its assigns, as its in-
terests may appear.

"It is hereby agreed that this insurance, as to the inter-
est of the mortgagee only therein, shall not be invalidated
by any act or neglect of the mortgagor or owner of the
property insured, nor by the occupation of the premises for
purposes more hazardous than are permitted by this policy.

"It is further agreed that the mortgagee shall notify said
company of any change of ownership or increase of hazard
which shall come to the knowledge of the said mortgagee,

and that every increase of hazard not permitted by this policy to the mortgagor or owner shall be paid for by the mortgagee on reasonable demand, according to the established scale of rates, for the whole term of use of such increased hazard.

"It is also agreed that whenever the company shall pay the mortgagee any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, it shall at once be legally subrogated to all the rights of the mortgagee under all the securities held as collateral to the mortgage debt, to the extent of such payment; or at its option may pay to the mortgagee the whole principal due or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and all other securities held as collateral to the mortgage debt; but no such subrogation shall impair the right of the mortgagee to recover the full amount of its claim.

" Date, March 3, 1886.

" JOHN H. ROE, *Agent.*"

The policy with the "mortgage slip" attached, upon its issuance, was delivered to the Trust Company, and has ever since been owned and held by it. The bond and mortgage executed by Crew to the Trust Company was in April, 1886, by it sold and assigned to one Huey, the Trust Company guarantying the collection of the principal and the prompt payment of the coupons of said mortgage loan. On the first day of April, 1886, Crew and wife sold and conveyed their real estate to one Platter. For the purposes of this case we take it as established by the evidence that no notice, written or otherwise, of this conveyance was given to the Insurance Company, either by Crew or Platter or the Trust Company, though the latter knew thereof soon after it occurred, until after the property insured had been destroyed, which occurred on the 27th day of April, 1889. On the 12th day of October, 1889, the Insurance

Company having refused to pay the loss, the Trust Company brought this suit, and on the 1st day of February, 1891, in pursuance of its contract of guaranty with Huey, the mortgage loan being due on that date, paid off and took up the mortgage loan, and owned and held it at the date of the trial of this case, December 30, 1891. The amount at that date due and unpaid on the loan being about $3,000, such amount being largely in excess of the value of the insured property destroyed by fire.

To reverse the judgment rendered in this case counsel for the Insurance Company make three arguments in this court:

1. It is contended that as Crew sold and conveyed the premises on which was the insured property without the written consent of the Insurance Company to such sale being indorsed on the policy, and as neither Crew nor Platter furnished the Insurance Company any written notice of such conveyance, the policy had become void and was not in force even as to the Trust Company at the time of the loss sued for. This argument is based upon the theory that the right of the Trust Company depends upon the observance of the stipulations of the policy by Crew; that the Trust Company cannot enforce the policy if Crew could not. We do not agree with this contention. The Trust Company is not here as the mere assignee of the insurance policy issued to Crew, nor is it here simply as the person appointed to collect the loss for Crew. We are not concerned in this case with the question as to whether Crew has forfeited his rights to enforce the policy. It may be that by reason of his sale of the property without the written permission of the Insurance Company thereto indorsed on the policy, so far as he is concerned, the policy from that moment ceased to be of any effect. It may be by reason of the failure of Crew and Platter to give written notice to the Insurance Company of the conveyance of the property to Platter, that neither of them

can enforce the policy.    However this may be, it does not follow that because Crew, by his conduct, has precluded himself from enforcing the policy, that therefore the Trust Company has.    As we view it, the Insurance Company, by its policy, agreed with Crew to insure his property on certain terms and conditions, and in case it was destroyed by fire, to make good the loss and damage.    This is not all the Insurance Company agreed to do in this policy. It also in this policy contracted and agreed with the Trust Company that it would pay to it, or its assigns, whatever loss or damage the insured property might suffer from fire within the life of the policy.    This contract with the Trust Company was a separate and independent contract from the one entered into between Crew and the Insurance Company; and the right of the Trust Company to enforce it does not depend upon whether Crew has kept his engagements with the Insurance Company.

In *Hastings v. Westchester Fire Ins. Co.*, 73 N. Y., 141, the facts were: Stout and husband executed a mortgage to Hastings for $14,000, and on the same day the insurance company issued to Mrs. Stout a policy of insurance on the mortgaged property, insuring it for three years in the sum of $10,000.    This policy contained a provision that in case any other insurance should be taken out on the insured property, the assured should be entitled to recover of the Westchester company no greater proportion of the loss sustained than the sum insured by it bore to the whole amount of insurance effected on such property.    The policy also contained a provision that the loss, if any, should be payable to Hastings, the mortgagee; and the policy also contained a provision almost identical with the one contained in the "mortgage slip" attached to the policy in suit.    After this policy was issued Mrs. Stout procured $4,000 additional insurance on the property.    The insured property was destroyed by fire, the loss amounting to $9,832.52.    Hastings, the mortgagee, and to whom the

loss under the Westchester policy was payable, claimed the entire amount of this loss from that company. The Westchester company resisted this, claiming that by reason of the additional insurance procured on the property by Mrs. Stout, it was only liable for ten-fourteenths of the total loss. Miller, justice, delivering the opinion of the court of appeals of New York, said: "It is claimed, however, by the appellant's counsel that the policy was an insurance of the interest of the owner of the property solely; that such owner was the assured, and the defendant only agreed to make good the loss of such owner, and inasmuch as another policy existed at the time in favor of such owner, although entirely unknown to both the plaintiffs and the defendant, the latter was entitled to the benefit of the condition contained in its policy, which declares that in case of any other insurance, * * * the assured is entitled to recover no greater proportion of the loss sustained than the sum insured bears to the whole amount insured thereon. This position cannot, I think, be maintained. Prior to the time when the mortgage clause was entered upon the policy, the word 'assured' referred to the owner, and it is hardly to be assumed that the mortgagees would have accepted such a provision if there was any reason to suppose that they would be affected by any prior insurance. They would, no doubt, have demanded a separate policy as mortgagees, instead of trusting to the hazard and uncertainty of pursuing a remedy upon a policy of which they had no knowledge, and against a company to which they were strangers, and in regard to whose responsibility they had no information whatever. The legal effect of the mortgage clause was that the defendant agreed that in case of loss it would pay the money directly to the mortgagees; and they were thus recognized as a distinct party in interest. It created a new contract from that time with the mortgagees, the terms of which most clearly indicate that it had no relation to the application of the condition referred to. The insurance had

been to the owner, and the additional provisions, which were incorporated in the policy by the mortgage clause, created a distinct contract with the mortgagees. It was an independent agreement partaking in no sense of the character of an assignment of a policy of insurance, but one in which the mortgagees were recognized as a separate party, having distinct rights, and entitled to receive the full amount of insurance money, without any regard whatever to the owner of the property. The meaning of the word 'assured' has not been changed by the addition of the mortgage clause, the object of which evidently was to protect the mortgagees against the effect of the provision in which that word is employed. The interest of the latter was distinct and separate when this change in the policy was made, and the intention of the parties was, beyond question, to insure the plaintiffs under a new contract. Any different interpretation would lead to great injustice, and place the mortgagees under the control and at the mercy of the owner, by changing the character of the defendant's liability, which might operate to prevent the indemnity which the defendant intended to provide. If the condition referred to was in force either before or after the arrangement, the owner might effect other insurance, and thus jeopard the rights, if not entirely control the security, of the plaintiffs."

All that is said by Miller, justice, in the Westchester case is applicable to the case at bar. In this case the Insurance Company by the "mortgage slip" stipulated that the rights of the Trust Company should not be invalidated by any act or neglect of the mortgagor or owner of the insured property. Reading the entire policy together, the only reasonable construction that can be placed upon it is that it was never the intention of the Insurance Company or of the Trust Company that the rights of the latter should be made in any manner to depend upon any act or omission of Crew, the mortgagor and original owner of the insured property.

In *Westchester Fire Ins. Co. v. Coverdale*, 29 Pac. Rep.
[Kan.], 682, a policy substantially like the one in contro-
versy here, was considered by the supreme court of Kan-
sas, and in deciding the rights of a mortgagee to whom, by
a "mortgage slip" attached to the policy, the loss was made
payable, that court said : "The mortgage clause [slip]
\*   \*   \*   created an independent and a new contract, which
removes the mortgagees beyond the control or the effect of
any act or neglect of the owner of the property, and ren-
ders such mortgagees parties who have a distinct interest,
separate from the owner, embraced in another and a dif-
ferent contract.    The tendency of the recent cases is to rec-
ognize these distinctions, and thus protect the rights of the
mortgagee, when named in the policy ; and the interest of
the owner and of the mortgagee are regarded as distinct
subjects of insurance."

In *City Five Cents Savings Bank v. Pennsylvania Fire
Ins. Co.*, 122 Mass., 165, the supreme court had under con-
sideration a policy substantially like the one in suit, and in
discussing the rights of a mortgagee to recover on the pol-
icy notwithstanding the violation of its terms by the owner,
said : " The [insurance] company has made a special con-
tract with the plaintiff, by the fair construction of which
we think it is entitled to recover the whole loss proved in
this case, it being less than its debt.    The [insurance] com-
pany has agreed that 'no sale or transfer of the property
hereby insured shall vitiate the right of the mortgagee to
recover in case of loss.'    A necessary consequence of a sale
and transfer of the property is that the purchaser has a
right to insure his interest.    Such right is an incident of
his ownership.    The object of the special stipulation, which
the mortgagee took care to procure, was to secure the in-
surance of its interest as mortgagee and to avoid its defeat
by any sale or transfer of the property ; and by a fair in-
terpretation of the contract it means that its right to re-
cover shall not be vitiated by any of the natural conse-

quences or incidents of a sale or transfer. Otherwise the stipulation is of very slight value to the mortgagee."

In *Hartford Fire Ins. Co. v. Olcott*, 97 Ill., 439, the facts were: The owner of property procured a policy of insurance on the buildings thereof in his own name, for his own benefit, and for the benefit of a bank to which he owed a debt secured by a mortgage on the insured property. This mortgage required the owner to insure the property for the benefit of the bank. The policy provided that in case of loss the insurance company should pay the amount of it to a trustee named in the mortgage, for the benefit of the bank or the holder of the note. The policy also provided that the owner might procure additional insurance, but that in case he did so, and loss occurred, he should not be entitled to recover of the Hartford Insurance Company any greater proportion of the loss than the amount insured by its policy bore to the whole sum insured. The policy also provided that in case of loss and a failure of the insurance company and the insured to agree upon the amount thereof, the controversy should be submitted to arbitration. There was a mortgage clause or "mortgage slip" attached to the policy containing substantially the provisions of the "mortgage slip" made a part of the policy in controversy here. The owner of the property procured additional insurance thereon. A loss occurred, and the owner and the insurance company arbitrated the amount thereof. The insurance company having refused to pay the amount of loss to Olcott, the trustee in the mortgage held by the bank, this suit resulted. The supreme court of Illinois decided that the owner and the bank held distinct interests under the policy, it being in substance two contracts; that the owner in a suit on the policy for a loss would be limited to a recovery of a *pro rata* share of the company, when prorated with the amounts of the subsequent policies, and would be bound by his act of submitting the amount of damages to appraisal;

but the bank, in a suit by it or its trustee, would not be limited to a recovery of the insurance company's prorated share, with the other companies issuing the subsequent policies, nor would it be bound by the selection of appraisers in which it did not join, and that it had no control over the acts of the mortgagor and was not bound by his acts or neglect. In the case at bar, if the Trust Company was suing simply as the assignee of Crew, then its right to recover would depend upon whether Crew could recover; or if, by the insurance policy, the Trust Company had been named as a party to whom the loss should be paid, as the agent or trustee of Crew, then its right to recover would depend upon whether Crew could enforce the policy; but the Trust Company does not stand in either of these relations in this case. It had an interest in the assured property, in that it had a lien upon it and stands here to enforce rights of its own under the contract between it and the Insurance Company.

2. As already stated, one of the terms of the policy, or the "mortgage slip" made a part thereof, was that the Trust Company would notify the Insurance Company of any change of ownership of the insured property or increase of hazard thereto which should come to the knowledge of the Trust Company. The Trust Company learned of the conveyance of the property by Crew to Platter soon after it occurred, but neglected to notify the Insurance Company thereof. The second argument of counsel for the Insurance Company is that because of the failure of the Trust Company to notify the Insurance Company of the change of ownership of the insured property, the Trust Company has lost its right to enforce the policy. It is not claimed that the transfer of the property in any manner increased the hazard of the risk. So we have the question as to whether the neglect of the Trust Company to notify the Insurance Company that Crew had conveyed the property worked a forfeiture of the rights of the Trust

Company to enforce the policy. The policy does not provide when the mortgagee shall give this notice, nor is there any provision in the policy or "mortgage slip" to the effect that in case the mortgagee comes into possession of knowledge that the hazard of the risk has been increased or that the property has been conveyed, and neglects to notify the Insurance Company thereof, that the policy shall therefore be void. We are not prepared to say that such a provision could be enforced if it was contained in the policy. There is no claim here on the part of the Insurance Company that it has suffered any injury or damage by reason of the neglect of the Trust Company in this respect. The Insurance Company has received a premium for carrying this risk for five years, and we do not think that it should be allowed to escape compliance with its contract because the Trust Company has neglected to perform an immaterial promise on its part, and which neglect of the Trust Company has worked no injury whatever to the Insurance Company. (*Hastings v. Westchester Fire Ins. Co.*, 73 N. Y., 141.)

3. The third point relied upon by counsel for the Insurance Company for reversing this case is that this suit was not brought in the name of the real party in interest. We have already seen that the policy contained a separate and independent contract between the Insurance Company and the Trust Company, and that the Trust Company had an interest in the insured property. By the terms of this contract the policy, when issued, was delivered to the Trust Company and it has never parted with its possession or the title to it since. "Where, by a policy of fire insurance, a portion of the loss is made payable to a third person as his interest may appear, the language imparts an interest in the property in such third person to the extent of his interest; the insurance is for his benefit, and he or his assignee may maintain an action upon the policy in case of loss." (*Pitney v. Glens Falls Ins. Co.*, 65 N. Y., 6.) In this case

Crew, had he never conveyed the insured property, could not have maintained an action against the Insurance Company to recover this loss, at least, without showing that he had paid and discharged the mortgage debt. (*Westchester Fire Ins. Co. v. Coverdale, supra.*) At the time the suit was brought Huey, the owner of the mortgage debt, may have been a proper party plaintiff; but that question was not raised in the court below and is not raised here. Furthermore, Huey, by assigning the mortgage debt to the Trust Company during the pendency of the action, parted with all his interest, if he had any, in the subject-matter of this action and disqualified himself from being a party thereto. The Trust Company, by assigning the mortgage debt to Huey, did not thereby assign him the insurance policy, nor part with their interest in it, nor their right to enforce it. As the Trust Company guarantied the collection and payment of the mortgage debt, it still had such an interest in the insured property as entitled it in case of a loss to sue for a recovery; and at the time the judgment was rendered, the only party that could have maintained this action was the Trust Company. (*Blackwell v. Insurance Co.*, 48 O. St., 533; *Cone v. Niagara Ins. Co.*, 60 N. Y., 619; *Weed v. Hamburg-Bremen Fire Ins. Co.*, 31 N. E. Rep. [N. Y.], 231; *Westchester Ins. Co. v. Coverdale*, 29 Pac. Rep. [Kan.], 682.)

There is no error in the record and the judgment of the district court is

AFFIRMED.