LAURENZI *et al. v.* ATLAS INS. Co. *et al.*

(*Jackson.*  April Term, 1915.)

1. INSURANCE. Fire insurance. Right of mortgagee.

A fire policy stipulated that with insurer's consent an interest
under the policy might exist in favor of a mortgagee on condi-
tions attached to the policy, and that insurer should not be
liable for a greater proportion of any loss than the amount
insured bore to the whole insurance, valid or not, and per-
mitted other insurance.  Subsequently insured gave a mort-
gage, and a rider attached to the policy provided that loss,
if any, should be payable to the mortgagee as his interest
might appear, but that in case of any other insurance the in-
surer should not be liable for a greater proportion of any loss
than the sum insured bore to the whole amount of insurance
on the property.  Insured had procured another policy, of which
the mortgagee had no knowledge.  *Held,* that the contract evi-
denced by the rider was distinct from the policy, and pro-
tected the mortgagee to the extent of his interest, to the amount
of the face of the policy, if necessary, and the stipulation as
to contribution in the policy or in the rider did not limit the
mortgagee's rights.  (*Post, pp.* 655-660.)

Cases cited and approved:  Brown City Savings Bank v. Wind-
sor, 198 Fed., 28; Smith v. Union Insurance Co., 25 R. I., 260;
Hastings et al. v. Westchester Fire Insurance Co., 73 N. Y.,
147; Eddy v. London Assurance Corporation, 143 N. Y., 311;
Reed v. Firemen's Insurance Co., 81 N. J. Law, 523; Syndi-
cate Insurance Co. of Minneapolis v. Bohn, 65 Fed., 165; Bacot
v. Insurance Co., 96 Miss., 223; Hardy v. Lancashire Insurance
Co., 166 Mass., 210; Insurance Co. v. Olcott, 97 Ill., 439; Savings
Bank v. Insurance Co., 122 Mass., 165; Insurance Co. v. Trust
Co., 41 Neb., 834; Insurance Co. v. Bohn, 48 Neb., 743; Insurance
Co. v. Coverdale, 48 Kan., 446; Savings & Loan Co. v. Insurance
Co., 17 Wash., 175; Boyd v. Insurance Co., 25 Wash., 447; Ma-

Laurenzi v. Insurance Co.

goun v. Insurance Co., 86 Minn., 486; Insurance Co. v. Olcott, 97 Ill., 439; Insurance Co. of Minneapolis v. Bohn, 65 Fed., 165; Manufacturing Co. v. Insurance Co., 88 N. Y., 592; Hastings v. Insurance Co., 73 N. Y., 149.

2. INSURANCE. Contracts. Repugnant stipulations.

Where two clauses of a fire policy are so repugnant that they cannot stand together, the first governs, rather than the last, especially where the first clause expresses the chief object of the policy. (*Post, pp.* 660-663.)

Cases cited and approved: Teague v. Sowder, 121 Tenn., 132; Insurance Co. v. Williams, 11 C. C. A., 503; Insurance Office v. Varbel, 103 Ky., 758.

Case cited and distinguished: Bean v. Insurance Co., 111 Tenn., 186.

3. INSURANCE. Fire insurance. "Total loss." What is.

A wooden structure is a total loss within Acts 1909, ch. 447, making an insurer liable for the amount of the policy in the event of a total loss, where the roof and the walls, excepting on one side, and part of the front porch were wholly destroyed, and the wall on the one side and part of the porch were so badly burned in places that the lumber was not worth the labor of removal, and the walls standing were considered so dangerous by municipal authorities that they were required to be taken down, though the floor remained uninjured, except that a large hole was burned through it, and though the brick foundation on which the structure stood was unimpaired; since the identity and specific character of the structure as a building were obliterated. (*Post, pp.* 663-664.)

Cases cited and approved: Reed v. Insurance Co., 81 N. J. Law, 523; Williams v. Insurance Co., 54 Cal., 442; Packing Co. v. Insurance Co. (C. C.), 31 Fed., 200; Havens v. Insurance Co., 123 Mo., 403; O'Keefe v. Insurance Co., 140 Mo., 558.

4. INSURANCE. Fire insurance. Liability of insurance company.

An insurance company may comply with Acts 1909, ch. 447, authorizing insurance companies to contract with insured that he

shall maintain insurance on the property to the extent of an agreed proportion of the actual cash value thereof, and providing that insured, failing so to do, shall be a coinsurer to the extent that his insurance then in force is less than the amount of such agreed proportion, and may also stipulate the insurable value of the property, but its failure to do either does not prevent the applicability of the provision making insurer liable for the amount of the policy in the event of a total loss. (*Post, pp.* 664-666.)

Acts cited and construed:   Acts 1909, ch. 447.

Case cited and approved:   Dugger v.  Insurance Co., 95 Tenn., 245.

5.  **INSURANCE.  Fire insurance.  Right of mortgagee.  Agreements between mortgagor and insurer.  Effect.**

An agreement between a mortgagor and a fire insurance company as to the amount of loss payable to the mortgagee as his interest may appear, made without knowledge of the mortgagee, is not binding on him, and he may recover the full amount of the policy in the event of a total loss, if necessary to satisfy his interest.  (*Post, p.* 666.)

6.  **INSURANCE.  Fire insurance.  Loss.  Estoppel.**

One may show that a fire loss is more than that stated in the proofs, unless he has been guilty of fraud, or insurer has acted on the proofs in such a manner that to permit further·proof of loss would be inequitable.  (*Post, p.* 666.)

Cases cited and approved:  Leslie v. Insurance Co., 60 Misc. Rep., 558; Scottish Union v. Field, 18 Colo. App., 68; Brewing Co. v. Insurance Co., 81 Ohio St., 1.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County to the Court of Civil Appeals, and by *certiorari* from

the Court of Civil Appeals to the Supreme Court.—F. H. HEISKELL, Chancellor.

RANDOLPH & RANDOLPH, for plaintiffs.

R. LEE BARTELS, for defendants.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The bill was filed by the parties complainant, named as trustees under a deed of trust, seeking to recover from the defendants upon a fire insurance policy issued to one S. H. Hardin on February 13, 1911, insuring him against loss by fire to the premises described in the policy. The amount claimed was the face of the policy, $1,600. The German Fire Insurance Company was made a party defendant, upon the theory that it, having reinsured the risk of the Atlas Company, which issued the policy, was liable for the contract of that company.

The right of the plaintiffs as trustees to recover under the policy was predicated upon a mortgage or trust deed, naming them as trustees, executed by S. H. Hardin, the insured, taken in connection with a mortgage clause attached to the insurance contract. The trust deed and insurance policy were, respectively, made a part of the bill, the material provisions thereof being as follows:

The policy of insurance contains the following:

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee

or any person or corporation having an interest in the subject of the insurance, other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of the insurance relating to such interest as shall be written upon, attached to, or appended hereto. . . . .

"This company shall not be liable under this policy for a greater proportion of any loss on the described property . . . than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property. . . .

As appears upon the face of the policy, it contained a provision as follows:

"Other insurance permitted."

On the 26th of May, 1911, the insured, S. H. Hardin, executed the trust deed already referred to to the complainants, as trustees, and, pursuant to the request of the trustees, the representatives of the insurance company attached to the policy a rider containing the so-called New York standard mortgage clause, of which the following is a copy:

. "Loss or damage, if any, under this policy, shall be payable to Eugene and Bindo Laurenzi, trustees, as mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within-described property, nor by any foreclosure or other

proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy: Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same:

"Provided, also, that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy, or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation, and shall then cease, and this company shall have the right, on like notice, to cancel this agreement.

"In case of any other insurance upon the within-described property this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property issued to or held by any party or parties having an

insurance interest therein, whether as owner, mortgagee, or otherwise.

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payments shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of its claim."

The mortgage clause was attached to the insurance policy pursuant to an agreement had with the insured, S. H. Hardin, to keep the improvements upon the property conveyed in trust insured for the benefit of the trustees or their beneficiary. This agreement was as follows:

"I covenant to and with the said trustees that I will keep the improvements on the above-described property insured in a good and solvent insurance company doing business in Tennessee in at least the sum of $1,600; any loss under such policy to be made payable to said trustees as their interest may appear.

"Any loss under the policy, at the option of the holder of the debt secured hereby, shall be applied to

the payment of the debt secured, or to the cost of repairing or rebuilding the premises destroyed.

"I further covenant to pay the insurance premiums for the insurance on said improvements . . . and, should I fail, . . . then said trustees, or the holder of any of said notes, may pay said premiums, . . . and the money so paid out shall become my debt, and is to bear interest at six per cent, from the date of payment, and is to be considered a part of the debt secured by this instrument, and payment thereof enforced hereunder or against me personally."

The defendants answered the original and amended bills, and by way of answer averred:

That all liability of the Atlas Insurance Company under the policy sued upon had been assumed by the German Fire Insurance Company, its codefendant; that the loss had been adjusted with the insured, S. H. Hardin, on the basis of $1,500; that at the time of the fire complained of there was another outstanding policy issued by another company for the sum of $1,600 to S. H. Hardin, and that, by virtue of the provisions of what is known commonly as the pro rata clause, "contained in both the contract of insurance sued upon and the mortgage clause annexed thereto," the defendant insurer was liable only for its proportion of the amount of the loss, "to-wit, 1600-3200 of $1,500, or $750;" that this sum the defendant had been ready and willing at all times to pay to the trustee, pursuant to the mortgage clause; and that it was still ready and willing

to so pay, and tendered the amount by paying it into the registry of the court.

The evidence showed the following material facts:

The complainants' debt of $1,800 is practically wholly unpaid. The mortgage was executed May 26, 1911, and the mortgage clause attached thereto on the same date. The policy sued on was issued February 13, 1911, but provided that the insurance was to run from February 18, 1911, to February 18, 1914. S. H. Hardin, the owner, obtained another policy of insurance upon the improvements insured by the defendant's policy, which was issued by the Globe & Rutgers Fire Insurance Company on February 18, 1911. The complainants, as trustees, were in no wise interested in the Globe & Rutgers policy as mortgagees, or in any other manner. Neither the mortgagee nor the trustees had any knowledge of the existence of the Globe & Rutgers policy. The insurance in the Globe & Rutgers Company was contested upon the ground of other insurance obtained without the consent, knowledge, or permission of the insurer, based on the following term or condition therein:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy."

There was no agreement with the Globe & Rutgers Insurance Company sanctioning the prior insurance.

The chancellor awarded the complainants a decree for the amount of their claim, $1,600, thus denying defendants' claim to have a proration of its policy with the face of the policy issued by the Globe & Rutgers Insurance Company. The defendants appealed to the court of civil appeals from so much of the decree as awarded the complainants an amount in excess of $750, the amount tendered.

The court of civil appeals modified the decree of the chancellor to the extent of fixing the amount of the loss at $1,500, but in all other respects affirmed his decree.

We shall reserve to a later part of this opinion consideration of the amount of the loss.

The case was brought to this court by the writ of *certiorari,* and the following errors are assigned here by the defendants, viz.:

(1) "The fact that the complainants had no interest in the Globe & Rutgers policy, the other insurance, cannot affect the right of this insurer to prorate the loss, because:

"(a) It was the agreement of the original insured, Hardin, in the policy in controversy, that the loss should be prorated among all of the insurers, and the complainants, as trustees under the mortgage which Hardin subsequently executed to them, stand upon no higher plane than did the insured, as, under a proper construction of the mortgage clause attached to the policy, they are mere appointees to receive the proceeds of the insurance, and are bound by the terms and pro-

visions of the insurance contract just the same as the insured; (b) under the express contract of the parties, contained in the New York standard mortgage clause, it was provided that the policy should prorate with any other insurance 'held by any party or parties having an insurable interest therein, whether as owner, mortgagee, or otherwise'; (c) it being the agreement of the parties—i. e., the insurer, on the one hand, and the mortgagee, on the other hand—that the insurance in question should be prorated with other insurance, whether taken out by the mortgagee, or some one else having an insurable interest therein, it is wholly immaterial, so far as the right of the defendant to prorate with such other insurance is concerned, that the trustees had no interest in the other insurance, or that it would work a 'manifest injustice' to the trustees to permit the insurance company to prorate with the other insurance. The contract must be enforced, as it is reasonable, and not contrary to public policy."

(2) "The New York standard mortgage clause, if it be held to deprive the insurer of the right to prorate with the other insurance, as an abstract proposition, could not in the instant case be so treated, because the New York standard mortgage clause is effective only as to the subsequent acts of the mortgagor, and protects the mortgagee only as against those acts. In the case at bar the other insurance was taken out before the execution of the mortgage, and is not within the saving of the mortgage clause."

Laurenzi v. Insurance Co.

It is insisted under these assignments that the action of the court of civil appeals in rendering a decree against defendants for any amount in excess of $750, their alleged *pro rata* part of the loss, adjusted on the basis of $1,500, was erroneous.

We are of the opinion that defendants' theory of the case is untenable, to the effect that the contract in favor of the mortgagee is dormant until that of the owner of the property is rendered void by some act or neglect of such owner. This theory is supported by the authorities cited (*Brown City Savings Bank* v. *Windsor,* 198 Fed., 28, 117 C. C. A., 136, 41 L. R. A. [N. S.], 1012; *Smith* v. *Union Insurance Co.,* 25 R. I., 260, 55 Atl., 715, 105 Am. St. Rep., 882), but the opposite view is the more reasonable, and is supported by the weight of authority. That view is that the contract evidenced by the rider is a separate and distinct one with the mortgagee, designed for his protection, and in operation from the date of its execution; that, in so far as the policy or contract with the mortgagor is in harmony therewith, it is to be referred to, to supplement and complete the terms of the mortgagee's contract, and, in so far as the policy is out of harmony with the rider, such adverse provisions are to be disregarded; and, further, that under such a contract the security of the mortgagee cannot be invalidated, either in whole or in part, by any act or neglect of the mortgagor, either prior or subsequent to the execution of such contract with the mortgagee. Therefore the fact that the mortgagor in the present case had, without the knowledge

of the mortgagee, procured another policy on his own interest in the Globe & Rutgers Fire Insurance Company, cannot in any degree invalidate the mortgagee's insurance. It follows also that, the provisions of the contract with the mortgagor concerning contribution with other insurers being out of harmony with the rider, the latter must prevail, and the provisions referred to can have no effect upon the security of the mortgagees created by the contract with them. *Hastings et al.* v. *Westchester Fire Insurance Co.*, 73 N. Y., 147; *Eddy* v. *London Assurance Corporation*, 143 N. Y., 311, 38 N. E., 307, 25 L. R. A., 686; *Reed* v. *Firemen's Insurance Co.*, 81 N. J. Law, 523, 80 Atl., 462, 35 L. R. A. (N. S.), 343; *Syndicate Insurance Co. of Minneapolis* v. *Bohn* (U. S. Cir. Ct. of App. 8th Cir.), 65 Fed, 165, 12 C. C. A., 531, 27 L. R. A., 614; *Bacot* v. *Phenix Insurance Co.*, 96 Miss., 223, 50 South., 729, 25 L. R. A. (N. S.), 1226, Ann. Cas., 1912B, 262; *Hardy* v. *Lancashire Insurance Co.*, 166 Mass., 210, 44 N. E., 209, 33 L. R. A., 241, 55 Am. St. Rep., 395; *Hartford Fire Insurance Co.* v. *Olcott*, 97 Ill., 439; *City Five Cents Savings Bank* v. *Pennsylvania Fire Insurance Co.*, 122 Mass., 165; *Phenix Insurance Co.* v. *Omaha Loan & Trust Co.*, 41 Neb., 834, 60 N. W., 133, 25 L. R. A., 679; *Hanover Fire Insurance Co.* v. *Bohn*, 48 Neb., 743, 67 N. W., 774, 58 Am. St. Rep., 719; *Westchester Fire Insurance Co.* v. *Coverdale*, 48 Kan., 446, 29 Pac., 682; *Pioneer Savings & Loan Co.* v. *Providence Washington Insurance Co.*, 17 Wash., 175, 49 Pac., 231, 38 L. R. A., 397; *Boyd* v. *Thuringia Insurance Co.*, 25 Wash., 447,

65 Pac., 785, 55 L. R. A., 165; *Magoun* v. *Fireman's Fund Insurance Co.*, 86 Minn., 486, 91 N. W., 5, 91 Am. St. Rep., 370.

These conclusions find, as we think, further specific support in the language of the policy itself previously quoted, viz.:

That "if, with the consent of this company, an interest under this policy exist in favor of a mortgagee, . . . the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of the insurance relating to such interest, as shall be written upon, attached to, or appended hereto."

This language asserts the supremacy of the rider.

As to the consideration, it is not material that the mortgage bound the mortgagor to effect the insurance for the mortgagee and gave the latter the privilege of paying the premiums in case of the mortgagor's failure, and authorized such premiums to be charged to the mortgagor as a part of the mortgage debt; the insurance represented by the rider was but a contract of the insurance company with the mortgagee and for the benefit of the latter. *Hartford Fire Insurance Co.* v. *Olcott,* 97 Ill. 439, 454; *Syndicate Insurance of Minneapolis* v. *Bohn,* 65 Fed., 165, 12 C. C. A., 531, 27 L. R. A., 614, 620, 621.

Recurring to the main question, and specifically to the effect of the contribution clause in the rider, no case has been cited dealing directly with the question other than *Eddy* v. *London Assurance Association,* supra,

131 Tenn. 42

and in our researches we have discovered no other. The precise question now before us arose on three of the policies under examination in that case. In disposing of the matter the court said:

"As to three of the policies, the mortgage clause itself contained the provision that the company was only to be liable in the proportion which the sum it insured should bear to the whole amount of insurance on the property issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee, or otherwise. What meaning is to be attached to this provision, after taking into consideration the language heretofore quoted that the insurance of the mortgagee will not be invalidated by any act or neglect of the owner of the property? The act of obtaining this additional insurance was the act of the owner, and it was unknown to the mortgagee, and, of course, not consented to by him. The additional insurance could by no possibility benefit him, as it was not upon any interest of his in the property. He could not, therefore, resort to any of these additional policies for his indemnity. It is not a case of contribution in any sense, but simply one, on the insurers' theory, of diminution of their liability, caused by the act of the owner, and unknown, and with no possible corresponding benefit to the mortgagee. As a general principle, it is settled that, before this apportionment of the loss between different companies can be demanded, the different policies must have been upon the same interest in the same property or some part thereof. *Lowell Mfg. Co.*

v. *Safegard F. Ins. Co.*, 88 N. Y., 592.  Has this prin-
ciple been changed by this contract?   Can it be that the
mortgagee would knowingly consent to a diminution
of this liability to an extent which might leave it of no
value, consequent upon a secret act of a third party,
and where by no possibility could he protect his security
from such danger?   All the reasoning given under the
head last above discussed applies with equal force here,
at least so far as the probabilities of entering into such
a contract by the mortgagee are concerned.   It is clear
that the only object of the mortgagee is to obtain a
security upon which he can rely, and this object is, of
course, also plain and clear to the insurer.   Both par-
ties proceed to enter into a contract with that one end
in view.   In order to make it plain beyond question,
the statement is made that no act or neglect of the
owner with regard to the property shall invalidate the
insurance of the mortgagee.   When, in the face of such
an agreement, entered into for the purpose stated,
there is also placed in the instrument a provision as
to the proportionate payment of a loss, we think the
true meaning to be extracted from the whole instrument
is that the insurance which shall diminish or impair the
right of the mortgagee to recover for his loss is one
which shall have been issued upon his interest in the
property, or when he shall have consented to the other
insurance upon the owner's interest.   This may not,
perhaps, give full effect to the strict language of the
apportionment clause, but, if full effect be given to that
clause, and it should be held to· call for the consequent

reduction of the liability of the insurers in such a case as this, then full effect is denied to the important and material, if not the controlling, clause in the contract, which provides that the insurance of the mortgagee shall not be injuriously 'impaired or affected' by the act or neglect of the owner. As used in these mortgage clauses, this is the meaning of the word 'invalidate.' *Hastings* v. *Westchester F. Ins. Co.*, 73 N. Y., 149. We must strive to give effect to all the provisions of the contract, and to enforce the actual meaning of the parties to it, as evidenced by all the language used within the four corners of the instrument. We are also at liberty to consider the purpose for which the contract was executed, where that purpose plainly and necessarily appears from a perusal of the whole paper. That construction will be adopted in the case of somewhat inconsistent provisions which, while giving some effect to all of them, will at the same time plainly tend to carry out the clear purpose of the agreement; that purpose which it is obvious all the parties thereto were cognizant of and intended by the agreement to further and to consummate. There is no equity in this claim on the part of the insurers, and we think, from a perusal of the whole clause in the policy, that it was not intended to, and that it does not, cover such claim.''

The foregoing seems to us to furnish the only means possible to reconcile the two provisions. If they cannot be thus harmonized, they are in direct conflict, and the *pro rata* clause must give way to the earlier clause which provides that the interest of the mortgagee

"shall not be invalidated by any act or neglect of the mortgagor or owner." The effect of such conflict is shown in *Bean* v. *Aetna Insurance Co.,* 111 Tenn., 186, 78 S. W., 104. The syllabus of that case correctly states the substance of the decision on the point as follows:

"Where two clauses of a contract are so totally repugnant that they cannot stand together, the first governs, rather than the last, and especially should this rule of construction prevail when it appears that the first clause expresses the chief object and purpose of the contract. Defendant insurance company issued to complainant an accident policy purporting to insure him for a period of twelve months from noon of October 25, 1901. By a subsequent clause it was provided that said policy should not cover any disability from any disease contracted within fifteen days from noon of the day the policy bore date. Held, the second clause, being irreconcilably repugnant to the first provision expressing the chief purpose of the contract, is therefore void."

It is not, in our judgment, a sound view of the matter to say that the clause for contribution in the rider is but definitive of the earlier provision, and was introduced for the purpose of narrowing, and making more specific, the general terms of that provision. This would be contrary to the essential nature and purpose of that provision, which was to furnish to the mortgagee a reliable security in a definite sum free from any interference on the part of the mortgagor which would, to any extent, invalidate or make less adequate that security. If the contribution clause can stand with the main clause, and

be given its full apparent meaning, the effect must be, when the insurance is upon an interest other than that of the mortgagee, to abate the security of the latter in proportion to the amount of such other insurance, and therefore to invalidate his security to that extent; since he can have no recourse to insurances on interests other than his own. But this invalidation is the specific thing which it was the purpose of the main clause to guard against. Therefore there can be no harmony between the two clauses, except that based upon a partial destruction of the first, making it subordinate to the latter, or the restriction of the general scope of the latter making it subordinate to the first. The subject is further illustrated by the case of *Teague* v. *Sowder,* 121 Tenn., 132, 114 S. W., 484, in which the old rule applied in *Bean* v. *Insurance Co.* was reaffirmed and applied, and the whole subject gone into quite extensively, in an opinion by Mr. Justice McAlister. In that case the court had under consideration a deed in which the granting clause, appearing in the first part of the instrument, purported to convey an estate in fee, and in which the *habendum* cut down the estate granted to a life estate. The court, after adverting to the rule that where, in order to discover the true meaning of an instrument, it is essential to disregard its formal divisions, this course must be pursued, and the further rule that in case, under such construction, irreconcilable conflicts between the different parts of the instrument develop, that term which expresses the chief object and purpose of the contract must prevail, and clauses containing provisions

subordinate to the chief object and purpose of the contract must give way, held that the granting clause must prevail, and the *habendum* must give way.  We think the rules which these two cases state and follow must control the present controversy, and therefore that the so-called contribution clause of the rider cannot prevail to lessen in any sense the security clause expressing the chief purpose of the contract.  The cases of *Hartford Fire Insurance Co.* v. *Williams,* 11 C. C. A., 503, 63 Fed., 925, and *Sun Insurance Office* v. *Varbel,* 103 Ky., 758, 46 S. W., 486, 41 L. R. A., 792, cited on defendants' brief proceed upon principles the opposite of those which we have just held to be sound, and we cannot follow them.

Was there a total loss?  The roof of the building, a wooden structure, was wholly destroyed; likewise all of the walls except on one side, and part of the front porch; but these were so badly burned in places that the lumber in them was not worth the labor of rescuing and removing.  However, the walls standing were considered so dangerous by the city authorities that they were required to be taken down.  The floor remained uninjured, except that a large hole was burned through it in one place.  The brick foundation on which the structure stood was unimpaired.  Since, under these facts, the identity and specific character of the structure as a building were obliterated, we think the loss was total, although the parts last referred to remained unconsumed.  *Reed* v. *Fireman's Insurance Co.,* 81 N. J. Law, 523, 80 Atl., 462, 35 L. R. A. (N. S.), 343; *Williams* v.

*Insurance Co.,* 54 Cal., 442, 35 Am. Rep., 77; *Oshkosh Packing Co.* v. *Mercantile Ins. Co.* (C. C.), 31 Fed., 200; *Havens* v. *Germania Fire Ins. Co.,* 123 Mo., 403, 27 S. W., 718, 26 L. R. A., 107, 45 Am. St. Rep., 570; *O'Keefe* v. *Liverpool & London & Globe Ins. Co.,* 140 Mo., 558, 41 S. W., 922, 39 L. R. A., 819.

Does chapter 447 of the Acts of 1909 apply? We think it does. That act, so far as necessary to reproduce here, reads:

"That all corporations, firms, or individuals doing a fire insurance business in this State shall, with respect to policies issued from and after the passage of this act on buildings or property in this State, . . . be bound to pay the full amount of the policy in the event of a total loss of such buildings or property: And, provided, further, that the provisions of this section shall not be applicable to policies containing a coinsurance clause as authorized hereinafter; and, provided, further, that the insurer shall have the right to stipulate in the policy the insurable value of the property insured, and that any policy containing such stipulation shall be avoided if at the time of the loss the whole amount of insurance on such property shall be in excess of such stipulated insurable value."

The coinsurance section reads:

"That it shall be lawful for corporations, firms, or individuals doing a fire insurance business in this State to contract with the assured that the assured shall, during the life of such contract, maintain insurance upon the property insured to the extent of an agreed proportion

of the actual cash value of the property at the time that a fire occurs, and that the assured, if he shall fail to do so, shall be a coinsurer to the extent that his insurance then in force is less than the amount of such agreed proportion, and to that extent shall, as such coinsurer, bear his part of any loss: Provided, however, that the acceptance of such contract shall be optional with the assured, which will be conclusively presumed if its presence in the policy is indicated by the words 'Coinsurance Contract,' printed or stamped in capital letters, and in red ink, across the face of the policy."

It was within the power of the insurance company to comply with the section last quoted, and also to stipulate in the policy the insurable value of the property. Its failure to do either of these things could not prevent the application of so much of the act as makes the insurer liable for the full amount of the policy in the event of a total loss. This act must be read into every policy issued after its passage. *Dugger* v. *Insurance Co.*, 95 Tenn., 245, 32 S. W., 5, 28 L. R. A.; 796. It is suggested by defendant's counsel on his brief that, under such a construction of chapter 447, probably more than the value of the property destroyed might be collected in a case where there were several policies upon the same property aggregating more than its value. It seems that in some States such a result has been admitted. We need not consider it in the present case, as it does not arise. We deem it unlikely, however, that the court would sanction any such tempta-

tion to arson.   However, we do not see how it is possible
to avoid the operation of the act in the present case,
unless we hold that insurance companies, by disregard-
ing it, can make it ineffective.

It follows that on all the grounds stated in this opin-
ion the complainants are entitled to recover the full
amount of the insurance, unless it be they are estopped
by the fact that Hardin, the owner of the property
agreed with the insurance company on $1,500 as its
value in course of making the proofs of loss.

Was the agreement as to value binding on the mort-
gagee?   We think not.   Hardin acted without their
knowledge, and did not represent them.   *Leslie* v. *Fire-
man's Insurance Co.,* 60 Misc. Rep., 558, 112 N. Y.
Supp., 496; *Hartford Insurance Co.* v. *Olcott,* supra;
*Scottish Union* v. *Field,* 18 Colo. App., 68, 70 Pac., 149,
A different ruling seems to have been made in *Erie
Brewing Co.* v. *Insurance Co.,* 81 Ohio St., 1, 89 N. E.,
1065, 25 L. R. A. (N. S.), 740, 135 Am. St. Rep., 735, 18
Ann. Cas., 265; but the weight of authority is against
the ruling in that case, and the weight of reasoning, we
think, as well.   Moreover, the rule is general that one
may show that the loss was more than that stated in
the proofs unless the claimant has been guilty of fraud,
or unless the insurer has acted upon the proofs in such
a manner as that to permit a further showing would be
inequitable.   4 Joyce on Insurance, section 3319;  19
Cyc. 854; 2 Biddle on Insurance, section 1012.

The result is that the decree of the Court of Civil Ap-
peals must be modified, and that of the chancellor
affirmed.