**STATE SECURITIES COMPANY, a corporation organized under the laws of the State of Nebraska, Plaintiff,**

v.

**FEDERATED MUTUAL IMPLEMENT AND HARDWARE INSURANCE COMPANY, a corporation organized under the laws of the State of Minnesota and admitted to do business in the State of Nebraska, Defendant.**

**Civ. No. 30–L.**

United States District Court
D. Nebraska.

Sept. 13, 1960.

Sterling F. Mutz, Lincoln, Neb., for plaintiff.

F. B. Baylor, Baylor, Evnen, Baylor & Urbom, Lincoln, Neb., for defendant.

DELEHANT, District Judge.

Instituted in the District Court of Lancaster County, Nebraska, this action was removed to this court. Jurisdiction unquestionably exists under Title 28 U.S. C. § 1332(a) (1). Removal was in order, Title 28 U.S.C. § 1441, and the procedure therefor, Title 28 U.S.C. § 1446, was duly pursued. No jurisdictional question is presented to the Court or actually exists.

In its petition[1] the plaintiff prays for judgment against the defendant for the sum of $13,117.86, with interest thereon at the rate of nine percent per annum from September 1, 1955, for an attorney's fee to be taxed as costs, and for the costs of the action. Without ex-

haustive analysis, which, in the light of the findings of fact shortly hereinafter announced, the court regards as both unnecessary and calculated to initiate indefensible repetition, plaintiff's petition alleges the making by plaintiff on December 7, 1954 of a loan, in the sum of $14,-680.00, to one Bert R. Hamm, doing business as the Hamm Motor & Implement Company; the giving by the borrower as security for the loan of "a mortgage on the following described real estate and improvements[2] and stock of merchandise, to-wit on stock in the one story brick tiled building on Lots eleven (11) to Fourteen (14), both inclusive, Block nine (9) R.B. 552 in the city of Scribner, Dodge County, Nebraska," which mortgage required the mortgagor to purchase and pay for insurance against fire and other hazards upon the improvements[2] on such property in amount equal to the loan, insuring plaintiff against loss by fire to the extent of the plaintiff's interest in such loan; the procurement thereafter by Bert R. Hamm from defendant of a policy of insurance for the sum of $22,500.00, with an eighty percent coinsurance clause, "insuring the stock of merchandise and the improvements on said real estate"[2] against direct loss by fire (among other casualties), and the issuance by defendant of a "memorandum of insurance," in connection with which, on December 29, 1954, the defendant forwarded to plaintiff a loss payable clause to attach to such policy (or memorandum) of insurance;[3] Bert R. Hamm's making of payments, and the allowance of certain credits on the mortgage debt in amounts adequate to reduce such debt to $13,117.86 as of September 1, 1955, which, with interest thereon at

1. On this occasion, recognizing that the action was commenced in a Nebraska state court, the court refers to that pleading in the style in which it was necessarily entitled in the forum in which it was filed.

2. The assertion of the execution of a mortgage on "real estate and improvements" appears clearly to be mistaken. The mortgage involved appears to have been

concerned only with chattel property, that is, to have been a chattel mortgage *vide infra.* What has just been said applies also to the requirement of the chattel mortgage for protective fire insurance, and to the fire insurance actually obtained and provided, *vide infra.*

3. For the precise language of which "loss payable clause" see recital of facts hereinafter made.

the rate of nine percent per annum, from September 1, 1955, remains unpaid; the destruction by fire on June 14, 1955 of "the improvements on the aforesaid real estate,[4] the prompt communication of notice of loss to defendant, and defendant's denial of liability to plaintiff; and the indebtedness of defendant to plaintiff in the sum of $13,117.86, with interest thereon from September 1, 1955 at the rate of nine percent per annum.

Answering, defendant admits the purchase and procurement by Bert R. Hamm from defendant, and its issuance and delivery to Bert R. Hamm, of a policy of fire insurance, of which the answer sets out a copy, and of which defendant also issued the "memorandum of insurance" set out by plaintiff in its petition; the destruction by fire "to some extent" of the property thus insured; its denial of liability to plaintiff under the policy; and the issuance by defendant of a "loss payable clause" in the language alleged by plaintiff. Otherwise, defendant denies the allegations of plaintiff in its petition. And it alleges that the premium for its policy of fire insurance was paid by Bert R. Hamm; that on or about June 13, 1955, Bert R. Hamm, (then being the owner of the insured property) voluntarily, intentionally and willfully set and caused the fire by which the insured property was partially destroyed; that theretofore the "loss payable clause" had been issued and attached to, and was a part of, the policy; and that the right, if any, of plaintiff under the policy of insurance is only by appointment and derivative through Bert R. Hamm, and that plaintiff is not the real party in interest. And defendant prays for the dismissal of the action, and the recovery of its costs.

Trial of the action was had to the court without a jury. Beyond areas of agreement in the pleadings, supra, which the court accepts as factually determina-

tive, the proofs consisted principally of certain discovery proceedings disclosed in the files and records, some stipulations, depositions of Bert R. Hamm and his wife, and very brief oral evidence.

The facts, as found to exist, are now set down.

Plaintiff is, and at all times material herein has been, a corporation organized under the laws of Nebraska, with its principal place of business in Lincoln, Nebraska, and engaged in the business of loaning money.

Defendant is, and at all times material herein has been, a corporation organized under the laws of Minnesota, with its principal place of business at Owatonna, Minnesota, engaged in the business of fire insurance, and authorized by the Insurance Department of the State of Nebraska to write within such state fire, and other allied, policies of insurance.

At the times material herein during 1954 and 1955, at Scribner, in Dodge County, Nebraska, one Bert R. Hamm, as an individual, under the name and style of "Hamm Motor & Implement Company," was engaged in business both as a farm implement dealer and as an automobile dealer, in the latter of which ventures he sold automobile parts, and provided automobile service. In part, at least, he conducted his business in a building located on lots eleven (11) to fourteen (14), both inclusive, Block nine (9), R.B. 552 Scribner, Dodge County, Nebraska. However, during such interval, Bert R. Hamm sold and withdrew from his farm implement business, and thereafter continued to be engaged in the automobile business under the name and style of Hamm Motor Company.

On November 18, 1954, Bert R. Hamm, doing business as Hamm Motor & Implement Company, purchased from defendant, and defendant issued and delivered

---

4. It may be observed that at this point there was no averment, although there was proof, of the destruction or damaging of the chattel property, which is what was actually both mortgaged, insured, and destroyed or damaged. As to the im-

provements, they appear neither to have been mortgaged nor insured, *supra*, so far as this proceeding extends. For that matter, it is not shown that Bert R. Hamm owned the real estate or improvements.

to him, upon an annual premium payment basis, defendant's policy of fire insurance, numbered 441,881, whereby, for the term of five years from December 13, 1954, at noon, Standard Time, to December 13, 1959, at noon, Standard Time, at the location last described, to an amount not exceeding $22,500.00, it insured "Bert R. Hamm, doing business as Hamm Motor and Implement Company and legal representatives, to the extent of the actual cash value at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss . . . . . . . . . . . nor in any event for more than the interest of the insured, against all direct loss by fire, lightning and by removal from premises endangered by the perils insured against in this policy, except as hereinafter provided, to the property described hereinafter while located or contained as described in this policy . . . . . . . . . . . . . . .

### DESCRIPTION AND LOCATION OF PROPERTY COVERED

ON STOCK IN THE ONE STORY BRICK-TILE BLDG WITH APPROVED ROOF OCCUPIED AS AUTO & IMPLT SALES & SERVICE SITUATED LOT 11–14 BLK 9 RB 552 DODGE COUNTY SCRIBNER NEBR." [4]

That policy of insurance contained the following provisions, among many others:

"MORTGAGEE INTERESTS AND OBLIGATIONS. If loss hereunder is made payable, in whole or in part, to a designated mortgagee not named herein as the insured, such interest in this policy may be cancelled by giving to such mortgagee a ten days' written notice of cancellation.

If the insured fails to render proof of loss such mortgagee, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If this Company shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing."

and:

"PERILS NOT INCLUDED. This company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
(i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss."

and also:

"Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring
(a) while the hazard is increased by any means within the control or knowledge of the insured."

Attached to and constituting a part of such policy was this endorsement:

"UNIFORM STANDARD (new style) FORM No. 107L
 (edition Aug. 53).

## LIBERALIZATION CLAUSE

If during the period that insurance is in force under this policy, there be adopted in this state by the fire "insurance rating organization on behalf of this company, any forms, endorsements or rules by which this insurance could be extended or broadened, without additional premium charge, by endorsement or substitution of such form or endorsement, then such extended or broadened insurance shall inure to the benefit of the insured hereunder as though such endorsement or substitution of form had been made."

Form No. 107L (8–53)

UNIFORMITY

———◆———

Also under date of November 18, 1954, the defendant made and executed and attached to the original policy, the following "Loss Payable Clause No. 1:"

"UNIFORM STANDARD FORM NO. 111
 (Edition May '23)

## LOSS PAYABLE CLAUSE NO. 1

Loss, if any, to be adjusted only with the Insured named herein and payable to the Insured and STATE SECURITIES CORPORATION, 132 S 13TH ST., LINCOLN NEBR as their respective interests may appear, subject, nevertheless, to all the terms and conditions of the policy.

Attached to and forming part of Policy No. 441881 of the FEDERATED MUTUAL IMPLEMENT AND HARDWARE INSURANCE COMPANY
 Name of Insurance Company
issued at its OWATONNA MINN Agency.
 City or Town State
Dated Nov 18 1954
Form No. 111 (5–23) /s/ H. T. Quattlebaum Agent
 H T QUATTLEBAUM "

———◆———

and another copy of the immediately foregoing clause was provided for, and delivered to, plaintiff for attachment to its "memorandum of insurance." vide infra

As of November 18, 1954 (although the precise dates of preparation and delivery do not appear), defendant prepared for delivery, and later caused to be delivered, to plaintiff as a mortgagee of the insured property, a "memorandum of insurance," fairly reflecting the insuring clause of the foregoing policy, but not the conditions reflected in lines numbered 1 to 165 of the policy. Attached to such memorandum of insurance were copies of endorsements theretofore made in respect of the policy, and affixed to it as

riders. Plaintiff has that memorandum of insurance with those endorsements, and certain others subsequently executed and delivered to plaintiff.

Under date of December 7, 1954, the plaintiff loaned to Bert R. Hamm, doing business as Hamm Motor and Implement Company, the sum of $14,680.00. In consideration of such loan, and to evidence it and provide for its payment, "Bert R. Hamm and Mabel C. Hamm, husband and wife," under date of December 7, 1954 executed and delivered to the plaintiff their promissory note, of which a copy is set out in a footnote [5], and to secure the payment of such note, executed and delivered to the plaintiff their chattel mortgage, and thereby conveyed to the plaintiff, as security for the payment of such note and the debt by it evidenced, the following described personal property:

"1 National elec. cash register
Sioux valve refacer
Sioux valve grinder
Electric cylinder repboring machine
Ford & parts as described in attached sheet
New air compressor
1 old-style cash register
1 Sunbeam car testing machine
All shop tools in our possession
30 steel parts bins
3 office desks
2 adding machines

---

5. Copy of the note so executed follows:

S.S. 3 13436

"NOTE Lincoln, Nebraska December 7th 1954

"FOR VALUE RECEIVED, on or before 24½ months after date, we, the undersigned, jointly and severally promise to pay to the order of STATE SECURITIES COMPANY of Lincoln, Nebraska, at its office, the principal sum of * * FOURTEEN THOUSAND SIX HUNDRED EIGHTY AND NO/100 * * * * DOLLARS and added thereto $1,980.00 charges, computed at ¾% per month on unpaid principal balances on 23 monthly payments of $350.00 starting 1–20–55 and 1 of $8,610.00 on 12–20–56

If loan is prepaid, charges will be computed on principal balances for the time outstanding, at monthly percentage rate and unearned portion of precomputed charges credited to final payment of note. Charges retained may be increased to the extent that delinquency charges are computed in accordance with the monthly percentage rate, either on a prepaid loan or a loan paid at maturity or after maturity. If payments are not made as provided for, this obligation, at the option of the payee, shall become due and payable, regardless of the expressed maturity of said note.

The maker and all present and all subsequent endorsers of this note, severally and jointly hereby waive presentment for payment, protest, and notice of protest, and consent to the extension of said entire amount or any installment due thereunder without notice, and further assent to the subsequent addition of any signature or signatures, above or below a signature. We, and each of us, hereby acknowledge that we sign said instrument with reference to our separate estate, business and property, and with the intention of charging same for its payment. The acceptance by holder of a partial payment of any installment or amount due thereunder, or the failure of holder to promptly exercise any of the remedies herein provided, shall not waive the strict performance of any or all of the conditions of this note or prevent the holder from immediately pursuing any or all said remedies.

This note is secured by Mortgage on Real Estate & C/M Equipment

Borrower /s/ Bert R. Hamm Address

Borrower's
Wife /s/ Mable C. Hamm Address

Comaker /s/ Hulda Hamm Address "

and all other shop equipment in my possession.

All parts for Ford automobiles located in and kept for sale in the establishment of the undersigned known as Hamm Motor and Implement Company located in Scribner, Dodge County, Nebraska, the undersigned representing the present wholesale value of said parts to be in the sum of $16,000.00, and the undersigned further expressly agrees to keep replacement of said parts so that the wholesale value of the said parts does not fall below the sum of $10,-000.00 and that this mortgage does hereby expressly include all subsequent acquired replacement parts located on said premises."

Such chattel mortgage was on December 10, 1954 at 1:50 o'clock, P.M., filed in the office of the County Clerk of Dodge County, Nebraska, and ever since such filing has been and now is on file in the Chattel Mortgage Records of such county. It was as additional security under such chattel mortgage that defendant made and executed the "memorandum of insurance" and "loss payable clause" hereinbefore identified, and caused them to be delivered to plaintiff.

On December 29, 1954, defendant executed in respect of such insurance policy a further "loss payable clause," this one in the following language:

"UNIFORM STANDARD FORM NO. 111
(Edition May '23)

HAMM MOTOR AND IMPLEMENT CO
SCRIBNER NEBR EFFECTIVE 12–13–54

LOSS PAYABLE CLAUSE NO. 1

Loss, if any, to be adjusted only with the Insured named herein and payable to the Insured and STATE SECURITIES CORPORATION, 132 S 13th ST, LINCOLN, NEBR. FIRST NATIONAL BANK, SCRIBNER, NEBR. AND as their respective interests may appear, subject, nevertheless, to all the terms and conditions of the policy.

Attached to and forming part of Policy No. 441881 of the FEDERATED MUTUAL IMPLEMENT AND HARDWARE INSURANCE COMPANY

Name of Insurance Company

issued at its Owatonna Minn Agency. Dated Dec 29 1954

/s/ H. T. Quattlebaum Agent
Form No. 111 (5–23) H. T. QUATTLEBAUM ″

and it caused a copy of that clause to be transmitted to plaintiff for attachment to the foregoing "memorandum" of insurance. It is mentioned at this point that the record does not disclose the interest, if any, or priority, if any, under such clause of First National Bank, Scribner, Nebr., or any claim by it.

Of the debt, by plaintiff's note and chattel mortgage evidenced and secured, after allowing credit for all sums paid thereon by the makers thereof, and for the net proceeds of salvage after the fire, *vide infra*, there was unpaid on September 1, 1955 the sum of $13,177.86; and that sum with interest thereon at the rate of nine percent per annum from September 1, 1955 is still unpaid. On June 14, 1955, the amount unpaid on such debt was $13,962.50.

Prior to June 14, 1955, defendant had not provided plaintiff with a full copy of the foregoing original policy of insurance. It had, however, provided plaintiff with the "memorandum of insurance" already mentioned, and of such executed "riders" or endorsements as are relevant to plaintiff's interest under the policy.

Wherever, in any of the instruments relating to such insurance, the name "State Securities Corporation," appears, it was and is intended thereby to identify the plaintiff, whose true and correct name was and is State Securities Company.

The employment of the name, "State Securities Corporation" was simply a mistake.

While, formerly, a "loss payable clause" in favor of Allis Chalmers Manufacturing Company" was executed in respect of, and attached to, the foregoing policy of insurance, it was cancelled, effective March 14, 1955, and notice of such cancellation was endorsed on such "memorandum of insurance" in plaintiff's possession.

Loss Payable Clause Number 1, Form 111, in language as follows:

"UNIFORM STANDARD

FORM NO III
(Edition May '23)

LOSS PAYABLE CLAUSE NO. I

Loss, if any, to be adjusted only with the Insured named herein and payable to the insured and

_____

as their respective interests may appear, subject, nevertheless, to all the terms and conditions of the policy.

Attached to and forming part of Policy No. _____ of the

_____
Name of Insurance Company

issued at its _____ Agency.
City or Town State

Dated _____ 19 __
_____ Agent

UNIFORMITY
Form No. 111 (5–23)

NOTE: This clause not to be used in place of Contract of Sale Clause (see Form No. 44)"

———◆———

was filed with the Nebraska State Department of Insurance some time before December 1, 1947, and was approved by the Nebraska State Department of Insurance on December 1, 1947, thus prior to January 1, 1954. Its approval is still in effect.

Similarly, Standard Mortgage Clause Form No. 127–B, in the following language:

"UNIFORM STANDARD FORM NO. 127-B (Edition Sept. '34)

STANDARD MORTGAGE CLAUSE

_____
_____
_____

Loss or damage, if any, under this policy, shall be payable to _____ mortgagee (or trustee) as interest may appear, and this insurance, as to the interest of the mortgagee "(or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

Provided also, that the mortgagee (or trustee) shall notify this Company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

This Company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this Company shall have the right, on like notice, to cancel this agreement.

Whenever this Company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest accrued thereon to the date of such payment, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of _____ claim.

Attached to and forming part of Policy No. _____ of the _____ issued at
Name of Insurance Company
its _____ Agency. Dated _____ 19 __

Form No. 127B(9-34)

_____ Agent"

was filed with the Nebraska State Department of Insurance some time before December 1, 1947, and was approved by the Nebraska State Department of Insurance on December 1, 1947, thus prior to January 1, 1954. Its approval is still in effect.

The issuance and use of such Form 127-B by the defendant from and since its effective date has been, and is "without additional premium charge," in comparison with Loss Payable Clause No. 1, Form 111.

Such Standard Mortgage Clause, Form 127-B, is substantially like and considered by the defendant as the New York Standard Mortgage Clause, which has been in use since September, 1934.

On June 14, 1955, Bert R. Hamm was the owner of the property covered by the plaintiff's chattel mortgage, and by such policy of insurance, subject, however, to the chattel mortgage lien thereon of plaintiff.

On June 14, 1955, Bert R. Hamm voluntarily, intentionally, and wilfully set and instigated a fire by which he caused, to the extent thereof, the destruction of the property covered by and described in such policy of fire insurance. His setting and instigation of such fire were performed without the participation or knowledge of the plaintiff, or of anyone in its behalf, or for it.

The insured chattel property was by the fire just mentioned destroyed to such an extent that all of it that remained was material which could be, and was, "salvaged." At the time of the fire, such chattel property in its entirety had a fair market value of $12,956.87. In respect of the residue of the chattel property after the fire, salvage operations were conducted, out of which, the plaintiff as chattel mortgagee, received in gross the sum of $1,243.35, to obtain which, however, it necessarily expended $178.00 in the way of the fair and reasonable expense of salvage and sale, leaving the net realization from the salvage, $1,065.35. The court, therefore, considers and finds that the damage by fire to the mortgaged and insured chattel property, in addition to the net salvage therefrom, was $10,891.52.

The court is altogether aware that the proof in respect of the amount of the actual damage to the mortgaged and insured chattel property, of which the burden here rests on the plaintiff, is somewhat less than perfect or exact. In the nature of things, it may readily be understood, without elaboration, that a measure of imperfection and inexactness in such proof would be almost inevitable. Such evidence as has been presented upon the subject has consisted largely of gleanings from Mr. Hamm's inventories as of the end of the calendar year, 1954, supplemented by some testimony from which it may be and is concluded that,

in the interval thereafter until the fire, exhaustion of inventory by sales and replacement through acquisitions by purchases approximately offset each other. Admittedly, proof of the value of a destroyed stock of merchandise and equipment at the time of destruction, through the presentation of inventories based on wholesale cost (without carriage expense), such as is made before the court, is not certain or absolute. But such evidence is competent and, to the extent that it is not convincingly disputed, carries probative significance upon which a valuation may be arrived at. It is to be recalled also that Bert R. Hamm, as a witness, testified as to the conformity between the inventoried value of the chattel property and its actual value. And as its owner, he was competent without more to give such testimony. Borden v. General Insurance Company, 157 Neb. 98, 59 N.W.2d 141; Western Home Insurance Company v. Richardson, 40 Neb. 1, 58 N.W. 597; Jensen v. Palatine Insurance Company, 81 Neb. 523, 116 N.W. 286. The court has also given due consideration to certain evidence in the form of copies of Mr. Hamm's returns for local and state taxation of his business property. That that evidence tends to cast doubt upon the validity of the inventoried values is recognized. But evidence of such character, though competent and receivable, is not conclusive or invariably persuasive. It has to be evaluated in context. And there is probably no season during which, more surely than at the time for making personal property tax returns, the scriptural lament over the universality of human mendacity is timely. The court is neither shocked nor strongly persuaded on perceiving modest valuations in tax returns.

Considering that, as between the amount unpaid upon plaintiff's chattel mortgage lien and the debt by it secured, on the one hand, and, on the other, the amount of damage, above recovered salvage, by the fire, the latter, in the sum of $10,891.52 is in the lower amount, it is the sum which the plaintiff would be entitled to recover under the policy, if it

were determined herein that any recovery should be granted in its behalf.

The chattel property involved having been located, and the insurance contract of the defendant having been procured and delivered in Nebraska, although formally signed in Minnesota, the case is to be determined, so far as its substantive law extends, by the law of Nebraska. Title 28 U.S.C. § 1652, Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Counsel for the parties appear so to agree. In this ruling the court has undertaken to determine and observe the law of Nebraska, to the extent that it has been declared and, in legal areas not yet illuminated by the statutes or decisions of the state, to ascertain and observe the probable course of its court of last resort. In the trial, and in the reception of evidence, the court observed Rule 43 of the Federal Rules of Civil Procedure, 28 U.S.C.

What is ultimately before the court is the demand of the mortgagee under a chattel mortgage of unchallenged validity, without the joinder of its chattel mortgagor, for judgment against the insurer under a policy of fire insurance covering the encumbered chattel property, also of unquestioned validity, for the amount of the alleged damage to the claimant resulting from a fire which destroyed or damaged the mortgaged and insured chattels, and was deliberately caused and brought about by the chattel mortgagor and procurer of the policy of insurance. The demand rests, in the first instance, upon a written endorsement attached to the policy, declaring that the loss, if any, under the policy was "to be adjusted only with the insured named herein and payable to the insured and" the named chattel mortgagee "as their respective interests may appear." Saying which, the court is aware of the contention of the claimant that it is by law entitled to recover in like manner as it might if an endorsement in the language of the "Standard Mortgage Clause, form 127-B" had been executed by the insurer, and endorsed upon the policy; and this upon the theory that a statute of Nebraska operates to impose such an endorsement upon the policy, as well as upon the basis of plaintiff's professed understanding of the proper application of the "liberalization clause" quoted, supra.

 The court first encounters the assertion by the defendant that the plaintiff is not the real party in interest. Section 25–301, R.S.Neb.1943, Reissue of 1956. See also Rule 17(a) Federal Rules of Civil Procedure. The assertion is understood to assail the right of plaintiff to institute and maintain the action in its own name. So appraised, it is not well taken. For plaintiff, even in defendant's view of its status, is the assignee, *pro tanto*, of the proceeds of the policy, if any. And the assignee of a chose in action may sue upon it in his own name and right. See Section 25–302, R.S.1943, Reissue of 1956; Archer v. Musick, 147 Neb. 344, 23 N.W.2d 323; Crum v. Stanley, 55 Neb. 351, 75 N.W. 851; Barry v. Wachosky, 57 Neb. 534, 77 N.W. 1080. Or, if its status be that of one for whose benefit a contract has been made between two other parties, it is itself the real party in interest which may sue the obligated contracting party. Goos v. Goos, 57 Neb. 294, 77 N.W. 687; Morrill v. Skinner, 57 Neb. 164, 77 N.W. 375. The action, consequently, is not peremptorily dismissible on the ground that it is not brought by the real party in interest. What has been said in this paragraph has significance only in respect of the right of plaintiff to bring and maintain the suit. It is in no wise determinative of its right eventually to recover in it the judgment it seeks, infra.

Neither by motion, (Rule 12(b) (7), nor by answer, does the defendant assert the defense of "failure to join an indispensable party." It does not, therefore, attack plaintiff's right to recover on the ground that it has failed to include as a party either Bert R. Hamm, the named insured in the policy, and the ostensible owner of the equity of redemption in the mortgaged chattels, or First National Bank, Scribner, Nebr., designated, along with plaintiff in the loss payable clause dated December 29, 1954, supra. This

announcement, accordingly, refrains from dealing with any such defense.

■■ It must be, and is, concluded that, under the facts as found, Bert R. Hamm, if he had brought suit upon the policy, would necessarily have been barred by his own wilful wrongdoing from any right to recover. Even if there were in the policy no provisions instructive upon the point, he would have no coverage under the policy for a loss directly resulting from his own criminal conduct. It is *contra bonos mores* to allow a man to insure against the consequences of his own rascality. Western Horse and Cattle Insurance Company v. O'Neill, 21 Neb. 548, 32 N.W. 581 (involving insurance on a mare which the insured beat to death); Weiner v. Aetna Insurance Company, 127 Neb. 572, 256 N.W. 71 (in which the Supreme Court reversed a judgment for plaintiff peremptorily entered on motion at the end of defendant's evidence, and said that there was before the court evidence, adequate to require submission to the jury, that plaintiff had purposefully caused the fire which destroyed his hotel, which if he did, he could not recover); Union Insurance Company of Lincoln v. McCullough, 2 Neb. (Unof.) 198, 96 N.W. 79 (in which a woman, sole owner of a farm, was allowed, in 1901, therefore, before the enactment of Nebraska's currently operative statute of Descent and Distribution, to recover under a policy of fire insurance, as against the contention, then deemed immaterial, that her husband had burned the insured building); Davis v. Security Insurance Company, 139 Neb. 730, 298 N.W. 687 (in which the Supreme Court reversed the judgment of the District Court upon a verdict for plaintiff found in the face of evidence inescapably establishing his wilful burning of the insured property).

And, beyond that general consideration, the policy itself contains explicit provisions which repel any supposition that Bert R. Hamm might himself recover for the loss from the fire which he produced. To mention two such provisions, there is now recalled the contractual absolution from liability for loss (a) "caused directly or indirectly by neglect of the insured to use all reasonable means to save and preserve the property at and after a loss," and (b) "occurring while the hazard is increased by any means within the control or knowledge of the insured." Beyond reasonable question, one who deliberately sets a fire which destroys his property described in his fire insurance policy violates both of those provisions. And for loss resulting from his wrongful act he simply has no insurance.

But the plaintiff argues that it is entitled to recover for the loss resulting from the fire, notwithstanding Mr. Hamm's misdeed, and even though it be granted that Mr. Hamm himself may have no recovery under the policy. That argument proceeds upon several grounds or bases, which will now be separately adverted to and considered as briefly as may be.

Plaintiff contends, first, that it should be granted recovery upon the basis of the express terms of the actually executed "loss payable" clauses in its favor upon endorsement form 111.[6] Considering that contention, the court at once declares that it concurs in the plaintiff's position that it is not barred from recovery by the opening words of form 111: "Loss, if any, to be adjusted only with the insured named herein." "To be adjusted" in that clause means "to be determined", "to be settled in respect of amount." That "adjustment" may, and sometimes does include both the determination, and the payment, of the amount due is unquestionably true. But it has no such connotation in the clause under scrutiny. For, immediately after the language just quoted from the clause, there appears an express provision respecting the *payment* of the loss. The quoted language

6. It is to be recalled throughout that two such clauses were executed, as of different dates. They were, however, in identical form, except that in the later one, First National Bank, Scribner, Nebraska, was also designated as a beneficiary.

clearly does not extend to payment. There is no room for doubt on that score. And, as the court has already made clear, it considers that the existing loss payable clauses on Form 111 confer on plaintiff the right, in its own name and behalf, to sue the defendant for recovery of the loss under the policy to the extent only of its chattel mortgage interest, or the value of the secured property which was destroyed, whichever is the smaller.

That, in the decisions of the Supreme Court of Nebraska, language may be found which gives apparent, if unreal, support to plaintiff's further construction of form 111 is true. And Oakland Home Insurance Company v. Bank of Commerce of Grand Island, 47 Neb. 717, 66 N.W. 646, 36 L.R.A. 673 is relied upon for such support. But, in the course of that opinion, its writer adverted to a provision in the policy itself that "the conditions hereinbefore contained" (including one avoiding the policy for the unconsented sale of the premises) "shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto." And in view of that particular language, the Supreme Court Commission, acting in the case, held that, since the loss payable clause then before it contained no clause incorporating the defeasance into such loss payable clause, the defeasance did not extend to the interest of the beneficiary of the loss payable clause. Thus reasoning, the Commission said:

"In this case, in view of the clause in the policy, the 'loss payable clause' must be taken as if it contained an express provision insuring the mortgagee without regard to the conditions imposed upon the owner in the body of the policy. So construed, the case falls within the rule announced in the Phenix Ins. Co. v. Omaha Loan & Trust Co., 41 Neb. 834, 60 N.W. 133 [25 L.R.A. 679]. As we view that case, the mortgagee was entitled to recover to the extent of its interest, without regard to acts or omissions of the owner which might, as between the insurer and such owner, defeat recovery."

If the first sentence of that quotation be granted, what follows seems to be unexceptionable. But to this court, the conclusion of that first sentence seems to be highly dubious, if not clearly fallacious. In any event, the Oakland Home Insurance Company opinion is not even frail support for the present plaintiff's reliance upon its loss payable clause on Form 111. The Supreme Court Commission's construction of the loss payable clause in the Oakland case was almost inevitably unsound. But, if it was valid, it must follow that the loss payable clause then actually before the court was, in legal effect, one very different from the one on which the present plaintiff relies; and the Oakland opinion provides its own present distinction.

Just a few weeks before the Oakland Home Insurance Company ruling, the same commission of the Supreme Court delivered its opinion in State Insurance Company of Des Moines, Iowa v. New Hampshire Trust Company, 47 Neb. 62, 66 N.W. 9, 1106. In that case the Trust Company, as mortgagee, claimed under a loss payable clause, which was indistinguishable from that provided by Form 111. But, the commission in its opinion asserted that "under such a provision the contract of insurance, in so far as it related to the right of a mortgagee to recover, was * * * a separate and independent contract from the one which governed the right of the insured in that respect." And it allowed recovery by the mortgagee notwithstanding the existence of facts which, it conceded, might have operated to defeat recovery by the owner of the premises. Interestingly, though, it, too, cited and relied on Phenix Ins. Co. v. Omaha Loan & Trust Co., 41 Neb. 834, 60 N.W. 133, 25 L.R.A. 679, in which the loss payable clause was of the character of Form 127-B, infra, not Form 111. But the confusion of the commission in the State Insurance Company case was exposed and discredited quite early. First, in the cited case itself, on motion for re-

hearing, the commission filed this *per curiam* memorandum.

"Upon consideration of a motion for a rehearing, there was found in the brief submitted by the plaintiff in error such weight of argument that, without receding from the views expressed in the opinion as to the analogy afforded by the case of Phenix Ins. Co. of Brooklyn v. Omaha Loan & Trust Co., 41 Neb. 834, [60 N.W. 133, 25 L.R.A. 679] it is by the court deemed advisable to say that this question will be determined as an original one whenever its consideration becomes necessary. The motion for rehearing is overruled, however, because, from what has been noted in the opinion, it is evident that the application for insurance in no degree influenced the issue of the policy, and hence the representation as to the nonexistence of a mortgage on the insured property was immaterial."

Thereby, while adhering to its original ruling, the commission placed that ruling upon the ground that the facts disclosed no defense against recovery upon the policy by the owner himself. And in Farmers and Merchants Insurance Company v. Newman, 58 Neb. 504, 78 N.W. 933, the Supreme Court of the State, speaking through Judge Sullivan, explicitly exposed the error in the State Insurance Company case, vide infra. Liverpool and London and Globe Insurance Company v. Davis, 56 Neb. 684, 77 N.W. 66, may not be considered to suppport the plaintiff's position, for in that case the mortgagee had himself purchased and paid for the policy, and was actually the only assured. Somewhat similarly, State Credit Company v. National Old Line Life Insurance Company, 122 Neb. 345, 240 N.W. 426, was a case in which the mortgagee had personally purchased and paid for insurance on the mortgage interest. The policy, nevertheless, was written in the name of the owner of the premises with a simple "loss payable as interest may appear" clause in favor of the mortgagee.

Later, the owner sold the insured property, which sale, by the terms of the policy, terminated it. It was held that, while, ordinarily a mortgagee holding such a loss payable clause is simply an appointee of the insurance fund whose right of recovery is no greater than the right of his mortgagor, that was not true of the mortgagee in that suit, who was in truth the real insured. And the court cited and followed Antes v. State Insurance Company, 61 Neb. 55, 84 N.W. 412, infra.

Actually, reflective of cases in the plight in which the plaintiff stands, is the following discussion by Justice Sullivan in the opinion of the Supreme Court of Nebraska in Farmers and Merchants Insurance Company v. Newman, 58 Neb. 504, 78 N.W. 933;

"In actions on policies providing that the rights of the mortgagee shall not be invalidated by any breach of condition by the mortgagor or owner it has been generally held that the mortgagee has a distinct interest embraced in a separate contract, and that his right to indemnity is not affected by any act or omission for which he is not responsible. Phenix Ins. Co. of Brooklyn v. Omaha Loan & Trust Co., 41 Neb. 834, 60 N.W. 133 [25 L.R.A. 679]; Oakland Home Ins. Co. v. Bank of Commerce, 47 Neb. 717, 66 N.W. 646; Hanover Fire Ins. Co. v. Bohn, 48 Neb. 743, 67 N.W. 774. In State Ins. Co. of Des Moines v. New Hampshire Trust Co., 47 Neb. 62, 66 N.W. 9, the doctrine of these cases was applied, although the contract in suit did not exempt the mortgagee from the consequences of a breach of the conditions imposed on the assured. On rehearing (66 N.W. 1106), however, the court receded from this position to the extent of leaving the question open and undetermined. We are now convinced, as the result of a pretty thorough examination of the authorities, that, under a clause like the one here in question, the mort-

gagee claims through the mortgagor, and can recover only to the extent that the insurer is indebted to the insured in consequence of the loss. The ordinary 'mortgage slip' is, in effect, an agreement by the company to pay the mortgagee all, or a part, of any money which may become due to the insured under the contract for indemnity. The cases bearing upon this question are collected in an elaborate note to Oakland Home Ins. Co. v. Bank of Commerce, 47 Neb. 717, 66 N.W. 646 [36 L.R.A. 673], 58 Am.St.Rep. 663. This action, then, was in substance one brought by the plaintiff to recover of the company a sum of money due from it to the Crains. Her rights are neither greater nor less than theirs."

Let it be noted here, however, that in the cited case, the court went on to hold that the institution of litigation relied upon by the insurer to cancel the policy was inoperative for that purpose.

In Antes v. State Insurance Company, 61 Neb. 55, 84 N.W. 412, there was involved an insurance policy for whose premium the insured owner had given a promissory note, which he failed to pay at maturity. Suit was brought by a mortgagee whose rights were set out in a clause reading: "Loss, if any, payable to Katherine M. Antes of Canandaigua, N. Y., as her interest may appear, she being the mortgagee." The substance of the court's ruling is reflected in this quotation from the opinion:

"The failure of the insured to pay at maturity a note given for the premium due on a policy of insurance has been held to be a complete defense as to liability for loss of the property insured during the default, where it is provided that the policy, because of nonpayment of such note, shall lapse and be of no force and effect unless the conditions are waived by the insurer. [Home Fire] Ins. Co. v. Garbacz, 48 Neb. 827, 67 N.W. 864; [Phenix] Ins. Co. v. Bachelder, 32 Neb. 490, 49 N.W. 217. It is, however, claimed and pleaded in the reply that the mortgagee had no notice of the nonpayment of the premium note, and that as to her she is in a different position than would be the insured mortgagor, were he alone interested in a recovery. We regard the mortgagee as standing in no more favorable light than as assignee of the policy of insurance to the extent of her interest in the property insured by virtue of her mortgage thereon, and her rights with respect to the litigation are to be gauged by and rest upon the contract of insurance entered into by the insured and insurer. There are times, it is true, when a mortgagee of insured property may claim where no right would exist in favor of the insured mortgagor; but this arises out of the terms and nature of an agreement between the insurer and mortgagee, and which do not enter into the present case, where the mortgagee can only claim through and by reason of the original contract of insurance with the mortgagor. The contract of insurance is with the insured alone, with direction to pay the mortgagee, in case of loss as her interest as such may appear; and its validity depends upon performance or waiver of the conditions which it contains."

Actions involving loss payable clauses in language reflected, as are those in suit, in Form 111 have to be distinguished from those which arise out of policies to which are attached endorsements of mortgage clauses exactly or substantially in the language of Form 127–B. An endorsement in language identical with, or essentially equivalent to, Form 127–B is by the courts generally, and by the Supreme Court of Nebraska, held to create an independent contract between the insurance company and the mortgagee upon which suit may be brought, and recovery had, by the mortgagee, even though the owner-insured may, by his default or voluntary act, be barred from recovery. Concerning that significance

of clauses of the character of Form 127–B, there appears to be scant difference—or none at all—between counsel in the instant litigation. Extensive quotation from judicial authority supporting it would, therefore, appear to savor of mere ostentation. Of the Nebraska cases illustrative of the position, these are cited as fairly representative: Phenix Insurance Company of Brooklyn v. Omaha Loan and Trust Company, 41 Neb. 834, 60 N.W. 133, 25 L.R.A. 679; Hanover Fire Insurance Company v. Bohn, 48 Neb. 743, 67 N.W. 774; North British and Mercantile Company of London and Edinburgh v. Bohn, 49 Neb. 572, 68 N.W. 942. A "companion" case of the two last cited was Syndicate Insurance Company v. Bohn (8 Cir.) 65 F. 165. Naturally, it arose in Nebraska and in this court. In a characteristically scholarly and exhaustive opinion by Judge Sanborn, the Court of Appeals held that the owners of the destroyed property were themselves barred from recovery by their want of the sole and unconditioned ownership of the property under a policy provision avoiding the policy if the named insureds were not such sole and unconditional owners, but also held that under an endorsement essentially identical with Form 127–B, the mortgagee should have recovery despite such defect of ownership. It held that the effect of such an endorsement:

> "is to make a new and separate contract between the mortgagee and the insurance company, and to effect a separate insurance of the interest of the mortgagee, dependent for its validity solely upon the course of action of the insurance company and the mortgagee, and unaffected by any act or neglect of the mortgagor, of which the mortgagee is ignorant, whether such act or neglect was done or permitted prior or subsequent to the issue of the mortgage clause."

7. Both of which obviously antedate the ruling in Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and, on that account,

That court in its reasoning cited and substantially relied on Hastings v. Westchester Fire Insurance Company, 73 N.Y. 141. See also Westchester Fire Insurance Company v. Norfolk Building and Loan Association (8 Cir.) 14 F.2d 524, also a Nebraska case, in which, however, the court regarded the named assured, as well as the mortgagee, as entitled to recover. The two opinions of the Court of Appeals, Eighth Circuit,[7] just referred to are cited, not because they are necessarily reflective of Nebraska law, for they are not, but for their studied distinction between the consequences of endorsements comparable to Form 111 and Form 127–B, generally and broadly considered. And, though not necessarily, they do actually and fairly follow what is the law of Nebraska.

The court has concluded that the plaintiff is mistaken in its position that, under its loss payable clause(s) No. 1 on Form 111, that dated November 18, 1954 and also that dated December 29, 1954, and each or either of them, it may have recovery in this action upon the policy, despite the wrongful act of Bert R. Hamm in setting the fire, which destroyed or damaged the mortgaged and insured property. Under that clause, the plaintiff's rights were and are derivative, under and through Bert R. Hamm; and they were and are invalidated by his misconduct in plain violation of the conditions of the policy.

But plaintiff proceeds further. It insists that it is entitled to have the same right and interest in, and protection under, the policy of fire insurance which it would have possessed if an endorsement in language identical with that of Form 127–B had been executed in its favor by the defendant, and affixed to the policy, and delivered to it. That position appears to be taken upon two separate grounds. They will now be considered, and discussed briefly.

may be regarded as declaring and administering the then recognized "federal common law."

Plaintiff, first, resorts for that purpose to the LIBERALIZATION CLAUSE, copied above. It will be remembered that it provides that:

"If during the period that insurance is in force under this policy, there be adopted in this state by the fire insurance rating organization on behalf of this Company, any forms, endorsements or rules by which this insurance could be extended or broadened, without additional premium charge, by endorsement or substitution of such form or endorsement, then such extended or broadened insurance shall inure to the benefit of the insured hereunder as though such endorsement or substitution of form had been made."

The imperative answer to that contention is that it assumes the occurrence of something that simply has not happened. "If during the period that insurance is in force under this policy, there be adopted" is the express condition to any operation of the quoted clause. It is unquestionably prospective. It contemplates the possibility that during the stated five year term of the policy provisions more liberal than those available when it was executed might be erected in relation to one or more of the features of the policy without enlarged cost to the insured. And, in such contingency, it provides that the advantages of such liberalization should be conferred on the insured (and presumably his chattel mortgagee). But no such liberalization has occurred. Certainly the record establishes none. Loss payable clauses, such as Form 127–B, contemplates were available on November 18, 1954, when the policy in suit was issued, and had been for many years theretofore, supra. It was not the purpose, and is not the consequence, of the Liberalization Clause above quoted to introduce into fire insurance policies clauses, provisions or endorsements which, no less than now or at the time of loss, were available to the parties when the policies were issued, but were simply not used as between the contracting parties.

And plaintiff also, and vigorously, insists that by virtue of the express terms of Section 44–501, R.S.Neb.1943, Reissue of 1952, an endorsement in its favor as mortgagee in words identical with Form 127–B must be given effect in like manner as if it had been executed and delivered by the defendant in connection with the policy in suit.

Omitting its "subsections (1) to (9) which are presently immaterial, the cited section follows:

"44–501. Fire insurance; policies; form; contents. No policy or contract of fire and lightning insurance, including a renewal thereof, shall be made, issued, used or delivered by any insurer or by any agent or representative thereof, on property within this state other than such as shall conform in all particulars as to blanks, size of type, context, provisions, agreements and conditions with the 1943 Standard Fire Insurance Policy of the State of New York, a copy of which shall be filed in the office of the Director of Insurance as standard policy for this state, and no other or different provision, agreement, condition or clause shall in any manner be made a part of such contract or policy or be endorsed thereon or delivered therewith except as provided in subsections (1) to (9) of this section."

What that statute identifies is "the 1943 Standard Fire Insurance Policy of the State of New York." And in conformity with its mandate, a copy of it has been filed in the office of the Director of Insurance of the State of Nebraska. More than that, the policy presently in suit essentially conforms to it in its insuring language, and its conditions and provisions.

But Form 127–B, although identical with a like form in use in New York, and although approved by the Director of Insurance of the State of Nebraska, is not a part of "the 1943 Standard Fire Insurance Policy of the State of New York," to which by the mandate of the

quoted statute the plaintiff contends that fire insurance policies issued in Nebraska must conform. So far as the records of the office of the Director of Insurance disclose, both of forms 111 and 127–B now are, at the dates of the execution of the policy and loss payable clauses in this case were, and long theretofore had been, forms for loss payable clauses alike and equally available and allowable for use in connection with Nebraska fire insurance policies. But that did not make either of them a necessary or an actual part of "the 1943 Standard Fire Insurance Policy of the State of New York," to which alone Section 44–501 R.S.Neb. 1943, Reissue of 1952, either refers or applies. Parties negotiating fire insurance contracts in Nebraska are, and consistently have been, free to employ either of those forms in the preparation of loss payable clauses in favor of mortgagees. In this connection, the court recalls evidence presented during the trial by defendant, through the oral testimony of two witnesses, one a rate supervisor and the actual custodian of approved insurance forms, of the Department of Insurance of the State of Nebraska, the other an underwriter of a Nebraska fire insurance corporation, to the effect that, as a matter of tradition and practice in the fire insurance industry in Nebraska, endorsements on Form 111 are used for loss payable clauses in fire insurance policies covering chattel property, but endorsements on Form 127–B, the uniform standard mortgage clause, are used in policies covering improvements on real estate. That evidence appears not to be controverted directly. But the court does not regard such a tradition or practice, even granting its actuality, as alone and necessarily controlling against the plaintiff. On the face of those forms, either of them may reasonably and effectively be employed for an endorsement on a fire insurance policy, whether the insured property be chattel property or the structures on real estate. What matters is that, both of them being available, the contracting parties used Form 111. The defendant issued and delivered, and the

plaintiff accepted, loss payable clauses in that form. And they had a right so to proceed.

The court observes in passing that it does not regard Leisy v. Farmers Home Insurance Company, 128 Neb. 278, 258 N.W. 481, as controlling, or even instructive, in the present case. To the extent that it discussed the effect of the adoption by Nebraska legislative authority of the New York Standard form of fire insurance policy, it was dealing not with Section 44–501, R.S.Neb.1943, Reissue of 1952, but rather with the distinguishably different Section 44–601 Compiled Statutes of Nebraska, 1929. It is true that the latter section is historically a statutory forerunner of Section 44–501, R.S.Neb.1943, Reissue of 1952. But, in its present form, the statute has been radically changed since the 1929 compilation.

It is also to be recalled that, although the Standard Mortgage Clause, reflected in Form 127–B, is an approved New York form or endorsement, the law of that state does not mandatorily require that it, and only it, be attached to a New York fire insurance policy for the protection of a mortgagee. In that state, the law does not forbid special agreements between an insurer and the mortgagee of insured property relating to the rights and interests of the mortgagee. Nor does it compel the employment of a single approved form for that purpose. Hessian Hills Country Club v. Home Insurance Company, 262 N.Y. 189, 186 N.E. 439; Weiner v. Sentinel Fire Insurance Company (2 Cir.) 87 F.2d 286. See also Fields v. Western Millers Mutual Fire Insurance Company, 290 N.Y. 209, 48 N.E.2d 489, 146 A.L.R. 434, and Otsego Aviation Service Inc. v. Glens Falls Insurance Company, Sup., 83 N.Y. S.2d 454.

The court concludes that the parties to this litigation, for the protection of the mortgage interest of plaintiff employed and entered into an agreement which, under Nebraska's law, then was and yet is available and permissible. Their course is not charged to have been

tainted with fraud, deceit, or overreaching. And their rights must be measured by their contract.

Thus circumstanced, the plaintiff, from the inception of his interest, had, as against the defendant, no right of recovery except one derived through Bert R. Hamm, and its claim against the defendant must fall along with any claim which Mr. Hamm, himself, might make.

It follows, therefore, that the plaintiff's claim and this action must be dismissed with prejudice, and that the costs of the action must be taxed against plaintiff. A judgment is being made and given accordingly.